UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CAMILLE BYLO LEWIS,<br><br>　　　　　　　Petitioner,<br>　v.<br><br>STATE OF NEVADA, *et al.*,<br><br>　　　　　　　Respondents. | Case No. 2:13-cv-00757-MMD-VCF<br><br>ORDER |

**I.　SUMMARY**

Petitioner Camille Bylo Lewis filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. This matter is before this Court for adjudication of the merits of Lewis' amended petition ("Amended Petition"). (ECF No. 7.) For the reasons discussed below, this Court denies both the Amended Petition and a certificate of appealability.

**II.　BACKGROUND**

Lewis' conviction is the result of events that occurred in Clark County, Nevada on or about April 9, 2008. (ECF No. 8-6.) In an information filed in state district court, the state alleged that Lewis and Ericka Lynn Fleming stole a Las Vegas Metropolitan Police Department trailer worth more than $250.00. (*Id.*) Following a guilty plea, Lewis was adjudged guilty of grand larceny under the large habitual criminal statute. (ECF No. 8-11 at 2.) Lewis was sentenced to ten to twenty-five years in the Nevada Department of Corrections. (*Id.* at 3.) Lewis did not appeal.

Lewis filed a pro se state habeas petition and a counseled supplemental petition on June 8, 2010, and October 5, 2010, respectively. (ECF Nos. 8-13, 8-20.) Following an evidentiary hearing, the state district court denied the petition on May 4, 2011. (ECF

///

Nos. 8-23, 8-24.) Lewis appealed, and the Nevada Supreme Court affirmed on July 26, 2012. (ECF No. 8-38.) Remittitur issued on August 21, 2012. (ECF No. 8-39.)

Lewis filed a pro se federal habeas petition and the instant counseled Amended Petition on April 30, 2013, and October 23, 2014, respectively. (ECF Nos. 1-1, 7.) Respondents moved to dismiss the Amended Petition on November 20, 2014. (ECF No. 9.) This Court granted the motion on August 21, 2015, dismissing the Amended Petition as untimely and denying a certificate of appealability. (ECF No. 14.) Lewis appealed, and the United States Court of Appeals for the Ninth Circuit reversed and remanded. (ECF No. 18.) Following this Court's order for Respondents to respond to the Amended Petition, Respondents again moved to dismiss on March 2, 2018. (ECF Nos. 21, 28.) This Court denied the motion. (ECF No. 33.)

In her sole ground for relief, Lewis alleges that her federal constitutional rights were violated when her trial counsel failed to advise her that the state intended to seek habitual criminal treatment and failed to explain the consequences of the guilty plea. (ECF No. 7 at 6.) Respondents answered this sole ground for relief on April 1, 2019. (ECF No. 35.) Lewis replied and requested an evidentiary hearing on August 6, 2019. (ECF No. 43.)

**III.  LEGAL STANDARD**

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

///

///

2

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

///

///

## IV. DISCUSSION

Lewis alleges that her federal constitutional rights were violated when her trial counsel failed to advise her that the state intended to seek habitual criminal treatment and failed to explain the consequences of her guilty plea. (ECF No. 7 at 6.) Lewis elaborates that the record only shows at best that her trial counsel spoke with her about these issues in a crowded courtroom under harried circumstances. (ECF No. 43 at 23.) Lewis contends that she would not have pleaded guilty had her trial counsel apprized her of the true consequences of her plea. (*Id.* at 2.) In affirming the state district court's denial of Lewis' state habeas petition, the Nevada Supreme Court held:

> Lewis contends that the district court erred by not finding that counsel was ineffective for failing to (1) inform her that the State sought habitual criminal adjudication at sentencing, and (2) explain the consequences of entering a guilty plea. We disagree.
>
> When reviewing the district court's resolution of an ineffective-assistance claim, we give deference to the court's factual findings if they are supported by substantial evidence and not clearly wrong but review the court's application of the law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005). Here, the district court conducted an evidentiary hearing, heard testimony from Lewis' former counsel, and concluded that they were not deficient and that she failed to demonstrate prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *Kirksey v. State*, 112 Nev. 980, 987, 923 P.2d 1102, 1107 (1996). The district court also found that Lewis' claim that she was uninformed was belied by the record. *See Hargrove v. State*, 100 Nev. 498, 503, 686 P.2d 222, 225 (1984). We conclude that the district court's findings are supported by substantial evidence and not clearly wrong, and Lewis has not demonstrated that the district court erred as a matter of law.

(ECF No. 8-38 at 2–3.) The Nevada Supreme Court's rejection of Lewis' *Strickland* claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's

4

unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires the petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104–05. In *Harrington*, the United States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *Id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

The information filed by the state on December 24, 2009 "placed [Lewis] on notice that, in accordance with the authorization of NRS 207.010, punishment imposed pursuant to . . . [the] habitual criminal statute will be urged upon the Court if [Lewis] is found guilty . . . of Grand Larceny." (ECF No. 8-6 at 4.) Several weeks later, on January 14, 2010, Lewis' arraignment was held. (ECF No. 8-7.) Lewis was represented by Jack E. Buchanan, Esq., who informed the state district court that Lewis was "pleading guilty without negotiations." (*Id.* at 3.) During the state district court's canvass of Lewis, Lewis answered in the affirmative when asked if she understood that she could be sentenced to five to twenty years "under the small habitual criminal enhancement" or to ten years to life or a definite term of ten to twenty-five years "under the large habitual criminal enhancement." (*Id.* at 6–7.) Lewis also answered in the affirmed when asked if she read and understood the guilty plea agreement. (*Id.* at 7.) That plea agreement similarly stated that Lewis "underst[oo]d that if [she were to be] sentenced under the 'small' habitual criminal enhancement, the Court must sentence [her] to a term" of five to twenty years and if she were to be "sentenced under the 'large' habitual criminal enhancement[,] the Court must sentence [her] to" life without parole, ten years to life, or ten to twenty-five years. (ECF No. 8-8 at 3.)

Lewis' original sentencing hearing was scheduled for March 18, 2010. (ECF No. 8-10.) Lewis was represented by James P. Kelly, Esq., a colleague of Buchanan. (*Id.*) At the beginning of the hearing, the state sought to file certified copies of Lewis' prior judgments of conviction. (*Id.* at 3–4.) In response, Kelly indicated that he had not seen the judgments of convictions and had not "received the notice that was filed" of the state's intent to seek habitual treatment, arguing that the notice included in the information was insufficient. (*Id.* at 4.) The state district court continued Lewis' sentencing to allow Kelly an opportunity to review the judgments of conviction and "talk to [Lewis] about that." (*Id.* at 7.) The state district court also directed Kelly "to file [an] appropriate motion to have [the notice of intent to seek habitual treatment] stricken" if it was insufficient. (*Id.* at 7–8.)

6

Lewis submitted an affidavit as part of her post-conviction state habeas proceedings. (ECF No. 8-20 at 17–18.) Lewis stated that "[a]t [her] arraignment . . . Jack Buchanan advised [her] to waive [her] preliminary hearing," and "[i]n so doing, [she] was made to believe that [she] would receive 1 to 5 years for pleading guilty to Grand Larceny." (*Id.* at 17.) Lewis also stated that her "counsel never discussed with [her] the state's Notice to seek punishment imposed pursuant to the habitual criminal enhancement statutes" or "the consequences of pleading guilty to grand larceny with the habitual criminal enhancement imposed." (*Id.*) Likewise, Lewis testified at the post-conviction evidentiary hearing that neither Kelly nor Buchanan "discussed with [her] the [s]tate trying to seek habitual criminal treatment" before she pleaded guilty, and Buchanan never went over the guilty plea agreement with her. (ECF No. 8-23 at 36.)

Kelly testified at Lewis' post-conviction evidentiary hearing that he "handl[ed] Lewis'] case on a day to day basis" but that Buchanan went over the guilty plea agreement with Lewis. (ECF No. 8-23 at 6–8.) Kelly explained that he and Lewis "had plenty of discussions regarding large habitual treatment" and the state's "large habitual [plea] deal" and "small habitual [plea] deal" prior to her arraignment. (*Id.* at 10, 17, 24.) These discussions occurred "primarily in Court" with Kelly "explain[ing] to [Lewis] that the Prosecutor wanted to put her in prison for a very long time based on her numerous prior felony convictions." (*Id.* at 18–19.) In addition to discussing the possible penalties under both the small and large habitual criminal statutes, Kelly "explained to [Lewis] that the Prosecutor does not decide who gives the habitual criminal treatment; it's the Judge." (*Id.* at 19–21.) When asked about his statement to the state district court during Lewis' original sentencing hearing that he had not received notice of the state's intent to seek habitual criminal treatment, Kelly explained that he "had not seen . . . a stand-alone document from the Prosecutor's office stating, notice of intent to seek habitual criminal treatment." (*Id.* at 11.) Kelly also explained that this statement was made because he was "looking for a legal reason why the Judge could not go forward with the habitual criminal." (*Id.*) Regarding Lewis' plea agreement, Buchanan testified at Lewis' post-

conviction evidentiary hearing that he signed the agreement, meaning that he "fe[lt] that [Lewis] understood what was contained in the guilty plea agreement." (*Id.* at 30–31.)

The Nevada Supreme Court reasonably concluded that the state district court did not err in determining that Lewis' former counsel were not deficient. *Strickland*, 466 U.S. at 688. Contrary to Lewis' self-serving statements in her affidavit and at the post-conviction evidentiary hearing, Kelly testified that he discussed the fact that the state was seeking habitual criminal treatment and the penalties associated with that treatment with Lewis prior to her arraignment. (ECF No. 8-23 at 10, 17.) While it appears that these discussions took place "primarily in Court" (*id.* at 18–19), Lewis fails to demonstrate that the location of such discussions rendered them inadequate.[1] Moreover, although Lewis bases her deficiency argument, in part, on Kelly's statement during her original sentencing hearing that he did not receive notice of the state's intent to seek habitual criminal treatment, it appears that Kelly was merely referring to his mistaken understanding that the state had to file a stand-alone notice of intent to seek habitual criminal treatment separate from the information.[2] (*See id.* at 11; *see also* ECF No. 8-10 at 4.) The fact that Kelly was aware of the state's intent—although mistakenly

---

[1]Lewis requests that this Court conduct "an evidentiary hearing or at least legal argument on the question" of whether "it is impossible as a per se rule of law to properly consult with [a] defendant about pleading to a felony offense caring a mandatory minimum ten-year sentence in a court full of other attorneys and defendants." (ECF No. 43 at 22.) Even if Lewis presented evidence at an evidentiary hearing that discussions in court between an attorney and client can be brief and harried, this evidence would not affect this Court's determination that Lewis is not entitled to relief, especially since Lewis also fails to demonstrate prejudice. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."). As such, Lewis' request for a hearing is denied.

[2]*See* NRS § 207.010(2) ("It is within the discretion of the prosecuting attorney whether to include a count under this section *in any information* or file a notice of habitual criminality if an indictment is found." (Emphasis added)); *see also Crutcher v. Eighth Judicial Dist. Court*, 903 P.2d 823, 825 (Nev. 1995) (concluding that "the district court erred in adjudicating [the defendant] a habitual criminal because, at that time, the state had not filed an information seeking to impose the habitual criminal enhancement and listing [the defendant's] prior felony convictions").

believing the notice to be insufficient—is also shown by two letters he sent to the state prior to Lewis' arraignment. In those letters, Kelly references the criminal habitual treatment sought by the state and his counteroffer to the state's plea deal, seeking a deal by which Lewis would only be subject to the small habitual criminal statute. (ECF No. 8-21 at 16–17.) Accordingly, the record demonstrates that Lewis' trial counsel were aware of the state's intent to seek criminal habitual treatment and fulfilled their duty of informing Lewis of such treatment and its consequences. *See Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) ("[C]ounsel have a duty to supply criminal defendants with necessary and accurate information.").

Further, even if Lewis' trial counsel were deficient, the Nevada Supreme Court also reasonably concluded that the state district court did not err in determining that Lewis failed to demonstrate prejudice. *Strickland*, 466 U.S. at 694. Importantly, as the Nevada Supreme Court reasonably noted, the record shows that Lewis was otherwise informed about the habitual criminal treatment and plea consequences, thereby negating any contention that she would have insisted on going to trial had Kelly and Buchanan discussed—or further discussed—these issues with her. *Hill*, 474 U.S. at 59; *see also Womack v. Del Papa*, 497 F.3d 998, 1003 (9th Cir. 2007) ("Even if Womack's counsel's performance were somehow deemed ineffective, Womack was not prejudiced by his counsel's [inaccurate sentencing] prediction because the plea agreement and the state district court's plea canvass alerted Womack to the potential consequences of his guilty plea."). Indeed, the information, the plea canvass, and the plea agreement all discussed habitual criminal treatment, and the plea canvass and plea agreement both discussed the consequences of such treatment. (*See* ECF No. 8-6 at 4; ECF No. 8-7 at 6–7; ECF No. 8-8 at 3.)

Thus, because the Nevada Supreme Court reasonably denied Lewis' ineffective-assistance-of-trial-counsel claim, Lewis is denied federal habeas relief.

///

///

## V. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Lewis. Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability ("COA"). Therefore, this Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Applying this standard, this Court finds that a certificate of appealability is unwarranted.

## VI. CONCLUSION

It is therefore ordered that the first amended petition for writ of habeas corpus by a person in state custody pursuant to 28 U.S.C. § 2254 (ECF No. 7) is denied.

It is further ordered that Petitioner is denied a certificate of appealability.

The Clerk of the Court is directed to enter judgment accordingly and close this case.

DATED THIS 5th day of August 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE